**MASHEL LAW, L.L.C.**
**500 Campus Drive, Suite 303**
**Morganville, New Jersey 07751**
**T: (732) 536-6161**
**F: (732) 536-6165**
**E: smashel@mashellaw.com**
**Attorneys for Plaintiff Thomas Mittl**

By: Stephan T. Mashel, Esquire
     Attorney I.D. No. 03185-1986

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### Trenton Division

| | |
|---|---|
| THOMAS MITTL and TOMS RIVER AUTOMATIC DOOR & WINDOW, on behalf of themselves and all others similarly situated<br><br>                    Plaintiffs,<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC,<br>                  Defendant. | CASE NO: 3:15-cv-06886-BRM-DEA<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

# TABLE OF CONTENTS

I.    Introduction and Summary .............................................................. 1

II.   The Settlement and the Notice Program ........................................ 3

III.  Procedural History ......................................................................... 5

IV.   The Settlement Agreement Warrants Final Approval Under Rule 23 and the
      Case Law in the Third Circuit and the District of New Jersey ...................... 6

      a.  Legal Standard......................................................................... 6

      b.  The Settlement Class Satisfies the Rule 23(a) Standards ........................ 7

          i.   Class Members are so Numerous that Joinder is Impracticable .........8

          ii.  There Are Questions of Law and Fact Common to the Class
               Members ...........................................................................8

          iii. The Claims and Defenses of the Class Representative Are Typical of
               the Claims and Defenses of the Class...............................................9

          iv.  The Class Representative Will Fairly and Adequately Represent the
               Interests of the Class ...........................................................11

      c.  The Settlement Class Satisfies Rule 23(b)(3) ....................................... 12

          i.   Predominance..................................................................12

          ii.  Superiority......................................................................13

      d.  The Notice Procedures Carried Out Satisfy Due Process Requirements15

      e.  The Settlement is Fair, Reasonable, and Adequate and Should be
          Approved ............................................................................. 17

          i.   A Presumption of Fairness Applies ..................................17

          ii.  The Settlement Satisfies Each of the *Girsh* Factors ..........................18

V.    Conclusion .................................................................................. 27

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)............................................................ 15

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304, 1313 (3d Cir. 1993) ....................................... 20

*Bradburn Parent Teacher Store, Inc. v. 3M*,
  513 F.Supp.2d 322 (E.D. Pa. 2007).................................... 25

*Bredbenner v. Liberty Travel, Inc.*,
  No. 09-905, 2011 WL 1344745 (D.N.J. April 8, 2011) ...................................... 17

*D'Italia v. Lowe's Home Centers, Inc.*,
  No. SUCV110475BLS1, 2012 WL 12528092 (Mass. Supp. Ct. Dec. 5, 2012). 13

*Dartell v. Tibet Pharms., Inc.*,
  No 14-3260, 2016 WL 728150 (D.N.J. Feb. 22, 2016)...................................... 10

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ........................................................*passim*

*Hall v. AT&T Mobility*,
  No. 07-5325, 2010 WL 4053547 (D.N.J. Oct. 13, 2010)................................... 20

*In re Aetna Inc. Sec. Litig.*,
  MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001)......................................... 26

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ............................................. 19, 21, 24, 26

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
  795 F.3d 380 (3d Cir. 2015) .............................................................. 11

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ....................................................... 2, 22, 24

*In re Ins. Brokerage Antitrust Litig.*,
    579 F.3d 241 (3d Cir. 2009) ....................................................................... passim

*In re Insurance Brokerage Antitrust Litig.*,
    297 F.R.D. 136 (D.N.J. 2013) ..................................................................... passim

*In re Prudential Ins. Co. Am. Sales Practice Litigation Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ....................................................................... passim

*In re Remeron End-Payor Antitrust Litig.*,
    Nos. Civ. 02-2007, 2005 WL 2230314 (D. N.J. Sept. 13, 2005) ....................... 25

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ............................................................................. 21

*In re Safety Components, Inc. Sec. Litig.*,
    166 F.Supp.2d 72 (D.N.J. 2001)........................................................................ 23

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d. Cir. 2004) ...................................................................... passim

*Lazy Oil, Co. v. Witco Corp.*,
    95 F.Supp.2d 290 (W.D. Pa. 1997) ................................................................... 24

*Milliron v. T-Mobile USA, Inc.*,
    No 09-8149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) .................................. 17

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ............................................................................. 10

*Reyes v. Netdeposit, LLC*,
    802 F.3d 469 (3d Cir. 2015) ........................................................................... 8, 9

*Shephard v. Lowe's HIW, Inc.*,
    No. C 12-3893, 2013 WL 4488802 (N.D. Cal., Aug. 19, 2013)........................ 13

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ............................................................................... 8

*Sullivan v. DB Invs., Inc.*,

iv

667 F.3d 273 (3d Cir. 2011) ............................................................ 8, 25

**Rules**

Fed. R. Civ. P. 23
   (a) ............................................................................... *passim*
   (b)(3) ......................................................................... *passim*
   (c)(2)(b) ........................................................................ 15

## I.   INTRODUCTION AND SUMMARY

Plaintiff Thomas Mittl ("Mittl")[1] installed a variety of products, particularly windows and doors, for Lowe's Home Centers, LLC ("Lowe's") for over ten years. After Mittl was terminated as a Lowe's installer, he brought this class action charging that Lowe's misclassified him, and all other installers in the state of New Jersey, as independent contractors rather than employees in violation of the Construction Industry Independent Contractor Act (the "CIICA"), N.J.S.A. § 34:20-1, et seq.  The parties entered into a settlement agreement dated January 31, 2017 whereby in exchange for dismissal of all claims against Lowe's for allegedly misclassifying New Jersey installers, Lowe's has agreed to pay the class $2.85 million.

There are 476 eligible members of the Class and the $2.85 million represents almost $6,000 per installer.[2] Given the attendant risks of litigation, and risks of establishing damages, this represents a significant result. While Plaintiff asserted that maximum recoverable damages were approximately $27 million, Lowe's

---

[1] Plaintiff filed a First Amended Class Action Complaint on February 8, 2017 which added Toms River Automatic Door & Window as an additional plaintiff. (Dkt. 55.) The purpose is to effectuate a provision of the Settlement whereby Lowe's agrees to release all entities with which it contracted to perform installations from having to reimburse Lowe's for any payments made by Lowe's to installers who were allegedly misclassified by Lowe's. (*See* Dkt. 54-1 at Appendix A (the "Settlement"), at ¶2.)

[2] Members of the Class include those individuals whose installation company signed an installer agreement with Lowe's. (*Id.* at ¶5(a).)

countered that maximum damages were only $5 million. Thus, a recovery which represents a range of more than 10% to greater than 50% of recoverable damages is a strong recovery.

There is an "overriding public interest in settling class action litigation." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d. Cir. 2004). *See also, In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144 (D.N.J. 2013) ("[S]ettlement of litigation is especially favored by courts in the class action setting.").

As we discuss here, the $2.85 million Settlement represents an excellent outcome for the Class, and Mittl and his counsel respectfully submit that the settlement is fair, reasonable, and adequate and should be approved by this Court.

Notices were mailed to 476 individuals and installation companies who comprise the Class. (Declaration of Jeffrey C. Block, submitted herewith, ("Block Decl.") at ¶16.) To date, not a single class member objects to the settlement and only one class member has opted out demonstrating the strong support the settlement has received from the Class. (*Id.* at ¶¶19-20.) Accordingly, we respectfully submit that the Settlement be approved.

## II.    THE SETTLEMENT AND THE NOTICE PROGRAM

The Settlement provides for a maximum settlement amount of $2,850,000 ("Maximum Settlement Amount"), inclusive of certain fees and expenses,[3] to be distributed, as set forth in the Settlement Agreement, to the Settlement Class Members. (Settlement at ¶ 6(a).) Before agreeing to the settlement, Plaintiffs determined that if this action proceeded to trial and they prevailed on all of his claims, the maximum amount recoverable for the class if they prevailed at trial on all claims would have been approximately $27 million. Defendant disputed this amount and contended that maximum recoverable damages, if a class were certified, were closer to $5 million.  Plaintiffs submits that a gross recovery of up to $2.85 million – or approximately $6,000 per installer – is an eminently fair and reasonable recovery on these claims under the circumstances.

The $2,850,000 "Maximum Settlement Amount," less certain expenses and fees, will be paid out by the Claims Administrator to the individual installers who submit a valid and timely claim form.[4] To receive a share of the settlement, an individual settlement class member must declare under penalty of perjury:

> (i) that he or she executed a contract during the Class Period to perform installation work for Defendant in New Jersey and/or had an ownership interest in an installation company that performed installation services for

---

[3] Plaintiffs are concurrently submitting their motion for attorneys' fees and expenses, and an incentive award for Plaintiff Mittl.

[4] The deadline for submission of a timely claim form is June 5, 2017. (Block Decl. at ¶16.)

Defendant in New Jersey pursuant to such a contract; (ii) the identity of any other individual(s) at the installation company who either executed a contract during the Class Period to perform installation work for Defendant in New Jersey and/or had an ownership interest in an installation company that performed installation services for Defendant in New Jersey pursuant to such a contract (if any such individual is identified, then the Claims Administrator will promptly send a Notice Package to the individual at the installation company address); (iii) the name of the installation company through which installation work was performed for Defendant in New Jersey; (iv) his or her social security number or tax identification number; and (v) that he or she has not previously settled or released, or received awards for, the claims covered by this settlement.

(Settlement at ¶7(b)(3).)

If the Court awards the requested amount of attorneys' fees, expenses and the incentive award, the maximum settlement proceeds available for distribution to the class would be approximately $1.9 million. Thus, if every installer submitted a valid claim form, each would receive approximately $4,000.

At this time, approximately 76 installation companies and their principals have submitted valid and timely claim forms. (Block Decl. at ¶18.) Thus, pursuant to the terms of the Agreement, Lowe's will distribute 50% of the Potential Gross Individual Settlement Proceeds.[5]

Additionally, the standard form contracts entered into between Lowe's and the installation companies provides that Lowe's can seek indemnification from the

---

[5] At this time, less than 50% of the settlement class members have submitted valid and timely claim forms. Thus, Lowe's will retain the remaining 50% of the Potential Gross Individual Settlement Proceeds, pursuant to the terms of the Settlement. (Settlement at ¶8(e).)

4

installation companies if Lowe's is required to pay installers as Lowe's employees. Lowe's has agreed to provide a class-wide release of this provision so that no installation company is at risk of having to repay Lowe's the very benefits secured in this settlement. The First Amended Class Action Complaint was filed to include Toms River, the entity through which Mittl performed his installations for Lowe's, to effectuate this relief. (*See* Dkt. 55; Settlement at ¶¶2, 17(b).)

## III.   PROCEDURAL HISTORY

Mittl filed his class action complaint on August 3, 2015 in the Superior Court of New Jersey, Ocean County. (Block Decl. at ¶ 4.) On September 16, 2015, Lowe's removed the action asserting that this Court has jurisdiction under the Employee Retirement Income Security Act ("ERISA") and/or the Class Action Fairness Act ("CAFA"). (*Id.* at ¶5.) The Parties subsequently engaged in extensive discovery, including the propounding of multiple sets of interrogatories and document requests, as well as depositions of Mittl, other installers and Lowe's employees. (*Id.* at ¶12.)

On May 13, 2016, Mittl moved for class certification, seeking to certify a class consisting of:

> All those who signed a contract with Lowe's Home Centers, Inc. to perform installations for Lowe's in the State of New Jersey.

(*Id.* at ¶6.)

While the Motion for Class Certification was pending, the Parties agreed to hold a settlement conference before the Honorable Douglas E. Arpert, U.S.M.J. (*Id.*

at ¶7.) The Parties provided briefs to Judge Arpert on the merits of the case and on damages. (*Id.* at ¶¶7-8.) Though the initial settlement conference did not result in a settlement, the Parties continued to negotiate in good faith thereafter. On November 3, 2016, the Parties reached a Settlement in principle to settle this action on the terms set forth herein. (*Id.* at ¶8.) This Court granted preliminary approval of the settlement and notice plan on March 7, 2017. (Dkt. 56.) After duly notifying the Settlement Class Members, Plaintiffs now seek final approval of the settlement and respectfully submit that approval is warranted.

## IV.   THE SETTLEMENT AGREEMENT WARRANTS FINAL APPROVAL UNDER RULE 23 AND THE CASE LAW IN THE THIRD CIRCUIT AND THE DISTRICT OF NEW JERSEY

### a.   Legal Standard

At Final Approval, "to approve a class settlement agreement, a district court must [1] determine that the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b) are met and [2] must determine that the settlement is fair to the class under Federal Rule of Civil Procedure 23(e)." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Prudential Ins. Co. Am. Sales Practice Litigation Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998) (citation omitted).

### b. **The Settlement Class Satisfies the Rule 23(a) Standards**

Plaintiff Mittl now requests this Court finally certify the following class (the "Settlement Class"), which was preliminarily certified by this Court's Preliminary Approval Order:

> All installation companies that, at any time during the Class Period, performed installation services in the State of New Jersey for Defendant pursuant to a written contract, and all individuals who had an ownership interest in such installation companies during the Class Period and/or signed any of the installation contracts with Defendant on behalf of such installation companies.

The Settlement Class easily meets the standards for final certification. "The requirements of [Rule 23] (a) and (b) are designed to ensure that a proposed class has sufficient unity so that absent class members can fairly be bound by decisions of class representatives." *In re Ins. Brokerage*, 579 F.3d at 257 (internal quotations omitted). Under Rule 23(a), the prerequisites to class certification are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* If all the requirements of Rule 23(a) are satisfied, the parties seeking certification must then satisfy at least one of the separate provisions of Rule 23(b). *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 527. When faced with a request for certification of a settlement class, "the concern for manageability that is a central tenet in the certification of a litigation class is removed from the equation." *Sullivan v. DB Invs.*,

7

*Inc.*, 667 F.3d 273, 302 (3d Cir. 2011); *see also, In re Ins. Brokerage*, 579 F.3d at 257 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.") (citations omitted).

     i. <u>Class Members are so Numerous that Joinder is Impracticable</u>

"[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001). The Settlement Class is comprised of 476 installation companies and their principals. Thus, the numerosity requirement is easily met.

     ii. <u>There Are Questions of Law and Fact Common to the Class Members</u>

Plaintiff respectfully submits that there are questions of law and fact common to Settlement Class. As the Third Circuit explained in *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015):

> Commonality is a consideration of whether there are questions of law or fact common to the class. Commonality is satisfied where there are classwide answers….Commonality does not require perfect identity of questions of law or fact among all class members. Rather, even a single common question will do. A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. A court's focus must be on whether the defendant's conduct is common as to all of the class members. Again, the bar is not a high one.

*See also, In re Warfarin*, 391 F.3d at 527-528; *In re Ins. Brokerage*, 579 F.3d at 264.

Plaintiff respectfully submits that the commonality requirement is satisfied here. The principal common question is whether Lowe's misclassified installers as independent contractors rather than as employees in contravention of New Jersey law. Moreover, additional common questions exist, including whether the installer contracts – including the provisions restricting scope of work – afford Lowe's the ability to control the performance of installations, whether installations are performed outside the usual course of Lowe's business, and whether Lowe's has been unjustly enriched by shifting the costs of employment onto the installers and installation companies. These questions are resolved with common proof, including that class members signed substantially similar, uniform, "take it or leave it" contracts with Lowe's, and that all class members were classified as independent contractors rather than as employees. Thus, as Lowe's conduct is common to all class members, the Settlement Class satisfies the commonality requirement. *Reyes*, 802 F.3d at 486.

iii. The Claims and Defenses of the Class Representative Are Typical of the Claims and Defenses of the Class

Rule 23(a) requires that "the claims…of the representative parties [be] typical of the claims…of the class." The typicality inquiry requires the plaintiff to show: (1) that his claims "arise from the same event or practice or course of conduct and [are] based on the same legal theory as the claims of the class"; (2) that his claims are not "subject to a defense that is both inapplicable to many members of the class and [is]

9

likely to become a major focus of the litigation"; and (3) that "the interests of the class and class representative[] are aligned so that the latter will work to benefit the entire class through the pursuit of [his] own goals." *Dartell v. Tibet Pharms., Inc.*, No 14-3260, 2016 WL 718150, *4 (D.N.J. Feb. 22, 2016) (internal citations and quotations omitted). "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001) (citation omitted).

Here, "the claims of the representative plaintiff[] arise from the same alleged wrongful conduct on the part of" Defendant and "from the same general legal theories." *In re Warfarin*, 391 F.3d at 532. The operative documents, the contracts, and standards, are substantially identical across the Settlement Class. Moreover, Plaintiff submits that, like Plaintiff, Lowe's conduct harmed all Settlement Class Members – namely, its uniform policy of improperly classifying all Type 1 and General Contractor installers as independent contractors rather than as employees. The misclassification of the individual installers harmed both the individual installers and the installation companies. Thus, Plaintiff's interests are aligned with those of all Settlement Class Members. Finally, Plaintiff is not subject to any unique defenses that are likely to become a major focus of the litigation. Accordingly, all

Settlement Class Member's damages arise out of the same wrongful course of conduct and Plaintiff's claims are typical of those of the Settlement Class.

  iv. <u>The Class Representative Will Fairly and Adequately Represent the Interests of the Class</u>

In determining whether the class representative "fairly and adequately protect the interests of the class," courts examine "the interests and incentives of the class representatives, and the experience and performance of class counsel." *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 392 (3d Cir. 2015) (citations omitted). Thus, the adequacy prong of Rule 23(a) is satisfied when "the attorneys representing the named plaintiffs are clearly well qualified and experienced class actions attorneys, and the interests of the named plaintiffs are not antagonistic to those of the absent class members." *In re Ins. Brokerage*, 579 F.3d at 258 (internal quotations omitted). "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *In re Cmty. Bank*, 795 F.3d at 393. Plaintiff submits that there are no conflicts between Plaintiff and other members of the Settlement Class. Lowe's conduct is alleged to have injured Mittl and all other members of the Settlement Class in the same manner. Further, Plaintiff has retained highly capable and experienced counsel with experience litigating class action lawsuits, including employment class actions alleging independent contractor misclassification against Lowe's. Plaintiff's counsel has vigorously litigated this case, including in

negotiating this Settlement. Accordingly, the requirements of Rule 23(a)(4) are satisfied.

### c. **The Settlement Class Satisfies Rule 23(b)(3)**

Rule 23(b)(3) requires "'the court [to] find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *In re Ins. Brokerage*, 579 F.3d at 257 (quoting Fed. R. Civ. P. 23(b)(3)). This case easily shows both.

#### i. Predominance

Under Fed. R. Civ. P. 23(b)(3), the predominance requirement is met if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Reyes*, 802 F.3d at 489. As the Third Circuit has explained: "Rule 23 does not require the absence of all variations in a defendant's conduct or the elimination of all individual circumstances. Rather, predominance is satisfied if common issues predominate. The focus of Rule 23(b)(3) is on the predominance of common questions. A district court analyzes predominance in the context of Plaintiffs' actual claims." *Id.*

Here, Plaintiff submits that common questions of law and fact predominate over individual issues. The Settlement Class consists of 476 installation companies and their principals who were subject to uniform conduct by Lowe's – namely, misclassification of installers as independent contractors. At trial, the evidence adduced to prove misclassification of all installers would have been common to the class and consists of *inter alia*: the Installer Contracts and Installer Guides which afford Lowe's the ability to exercise some control over the completion of installations; Lowe's ability to dictate the timing of installations, job site conduct, and marketing Lowe's services; use of customer survey scores and job site inspections as a means of controlling installers' conduct; and, evidence that installations were performed within the usual course of Lowe's business. Moreover, other courts have found that the common legal question of whether Lowe's misclassified installers as independent contractors rather than as employees is susceptible to common proof. *D'Italia v. Lowe's Home Centers, Inc.*, No. SUCV110475BLS1, 2012 WL 12528092, *8 (Mass. Supp. Ct. Dec. 5, 2012); *Shephard v. Lowe's HIW, Inc.*, No. C 12-3893, 2013 WL 4488802, *9 (N.D. Cal., Aug. 19, 2013). Thus, the Settlement Class is sufficiently cohesive to meet the predominance requirement.

ii.  Superiority

Plaintiff also submits that the Settlement Class meets the superiority requirement set out in Rule 23(b)(3), which provides that certification is appropriate if class treatment "is superior to other available methods for the fair and efficient adjudication of the controversy." The Court must consider four factors in making this determination: (1) the interest of members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).[6]

In Plaintiff's view, the class action mechanism is clearly superior to other methods of adjudicating this matter. Members of the class do not have an interest in individual prosecution because individual claims here are modest while individual actions would be both expensive and time-consuming. *Smith v. Prof. Billing & Mgmt. Servs., Inc.*, No. 06-4453, 2007 WL 4191749, *4 (D.N.J. Nov. 21, 2007) ("Since the claims of the individual class members are relatively modest, and there is no alternative to litigating the claims, class certification is a superior method of adjudication rather than other available choices."). The Parties have engaged in

---

[6] Because the parties have reached a settlement, no manageability issues will arise. *Sullivan*, 667 F.3d at 306.

14

extensive discovery and motion practice, the cost of which would be prohibitive for most class members. Moreover, all class members have the same legal claim and no other litigation has commenced. And, as all installers and installation companies work for Lowe's in New Jersey, it is highly desirable to concentrate this litigation in this forum. Accordingly, Plaintiff respectfully submits that the Settlement Class satisfies the requirements of Rule 23(b)(3) and requests that the Court certify it for purposes of the Settlement.

### d. **The Notice Procedures Carried Out Satisfy Due Process Requirements**

Rule 23(e)(1) requires that notice be directed "in a reasonable manner to all class members who would be bound by the proposal." Class members are entitled to the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(b). The notice must contain the following information, in clear and plain English: (1) the nature of the action; (2) the definition of the settlement class; (3) the claims, issues, or defenses; (4) that a class member may appear in the action through an attorney; (5) that the court will exclude people who request exclusion and explains when and how to do so; and, (6) the binding effect of judgment on class members. *Id.* Notice must be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) (citation omitted).

The Court-approved notice which was provided to 476 class members, satisfies all due process requirements. (Block Decl. at ¶16.) Only 39, or 8%, were undeliverable with no updated address information. (*Id.* at ¶17.) The notice was reasonably calculated to provide actual notice to Class Members of the Settlement and the final approval hearing. (Dkt 54-1 at Exhibit A.) It described the nature of the action and the claims, issues, and defenses relevant in the action. It also explained the definition of the class and each class member's legal rights and options in the settlement. Moreover, the notice detailed the terms of the settlement and the releases underlying the Agreement. The notice also described, in detail, the processes for requesting to be excluded from the settlement and for objecting to the Settlement. (*Id.*)

Finally, the notice explained the claims process, which was simple and straightforward. It explained that, to ask for a payment, a class member need only complete and submit the included claim form by June 5, 2017. The notice also provided a phone number to call for help with completing the claim form. Class members were given an opportunity to cure a defective claim form and one reminder notice was mailed to each class member to remind them of the relevant deadline for submitting a claim. (Block Decl. at ¶16.) In sum, the notice and claims process were eminently fair and reasonable.

### e. **The Settlement is Fair, Reasonable, and Adequate and should be Approved**

#### i. A Presumption of Fairness Applies

A presumption of fairness applies where, as here, "a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors." *In re Insurance Brokerage*, 297 F.R.D. at 144 (citing *In re Wafarin.*, 391 F.3d at 535). Here, the Parties negotiated this Settlement with the help of the Court. Specifically, while the Motion for Class Certification was pending, the Parties agreed to hold a settlement conference before the Honorable Douglas E. Arpert, U.S.M.J.[7] (Block Decl. at ¶ 7.) The Parties provided briefs to Judge Arpert on the merits of the case and on damages and participated in a settlement conference on October 6, 2016. (*Id.*) While the Parties did not ultimately agree to the Settlement until after that conference, it was instrumental to the Parties in their subsequent negotiations and in the ultimate resolution of this action. As explained herein, the Parties had the benefit of

---

[7] *See Bredbenner v. Liberty Travel, Inc.*, No. 09-905, 2011 WL 1344745, *10 (D.N.J. April 8, 2011) (approving class action settlement in wage-and-hour litigation where "the Court directly oversaw the negotiations" and noting that "[p]articipation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties") (internal quotations and citations omitted); *Milliron v. T-Mobile USA, Inc.*, No 09-8149, 2009 WL 3345762, *5 (D.N.J. Sept. 14, 2009) (finding a presumption of fairness where a federal judge participated in settlement negotiations).

substantial discovery when negotiating this Settlement, and all counsel are highly experienced in employment and class action litigation. Moreover, no objection to the Settlement has been made to date. Accordingly, this Court should presume that the Settlement is fair.

ii.  The Settlement Satisfies Each of the *Girsh* Factors

To determine whether a class action settlement should be approved as "fair, adequate, and reasonable" under Rule 23(e), courts in the Third Circuit apply a nine-factor test set out in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). *See, e.g., In re Ins.*, 297 F.R.D. at 144 (identifying the *Girsh* factors). The *Girsh* factors include: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintain the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 156-57; *In re Ins. Brokerage*, 297 F.R.D. at 144. As demonstrated herein, evaluation of the *Girsh* factors demonstrates that the $2,850,000 settlement represents an excellent resolution of this

matter settlement that is overwhelmingly fair, reasonable, and adequate, thus warranting final approval.

> 1. Complexity, Expense, and Likely Duration of the Litigation

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001) (citation and internal quotations omitted). It is easily satisfied where, as here, "continuing litigation through trial would [require] additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial." *In re Warfarin*, 391 F.3d at 536.

There is no doubt that the claims alleged by the Settlement Class involve complex legal and factual issues. If the action were to proceed, Plaintiff would first have to succeed on his motion for class certification. Assuming Plaintiff was successful on that motion, the issue of class certification would likely remain hotly contested throughout the pendency of the litigation, with Lowe's possibly moving to decertify the class. Plaintiff also anticipates that Lowe's would move for summary judgment. Thus, if the action were to proceed, Plaintiff would have to win class certification and likely would have to defeat motions to decertify the class and for summary judgment. Even assuming Plaintiff was successful as to these motions, there is no guarantee that Plaintiff would obtain a favorable outcome at trial as Lowe's has vehemently denied Plaintiff's allegations, asserted numerous defenses,

and contemplates a different theory on damages which, if correct, would result in a much smaller recovery than Plaintiff proposed. The Parties also anticipated additional discovery, including of experts and absent class members.

Furthermore, as this action has been vigorously litigated by both parties, it is likely that the result of any trial would be appealed, thus further delaying any possible payment to the class members. In deciding whether to enter the Settlement, Plaintiff considered the range of these legal and factual issues and believed that the balance favored resolving the case at this stage. Accordingly, Plaintiff respectfully submits that the Settlement is fair and reasonable as it guarantees an immediate, meaningful recovery for the Settlement Class, protects the interests of individual installers and installation companies, and obviates the need for additional lengthy, complex, and uncertain litigation against Lowe's. *See Hall v. AT&T Mobility*, No. 07-5325, 2010 WL 4053547, at *7 (D.N.J. Oct. 13, 2010) ("Importantly, of course, settlement also provides the Class with immediate, definite relief."). The first *Girsh* factor thus weighs in favor of approval.

## 2. Reaction of the Class to the Settlement

The second *Girsh* factor examines "whether members of the class support the settlement." *In re Prudential*, 148 F.3d at 318. A lack of significant objections by class members is "tacit consent" to the settlement. *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313, n.15 (3d Cir. 1993); *see also, In re Ins. Brokerage*, 297 F.R.D. at 145

(concluding that the "dearth of objections by Class Members to the Settlement weighs in favor of approval").

Plaintiff submits that, to date, the response of the class members has been highly favorable. After a robust notice program, roughly 16% of class members have submitted timely and valid claim forms. (Block Decl. at ¶ 18.) Per the terms of the Settlement, Class Members can submit claim forms until June 5, 2017. (*Id.* at ¶ 16.)

Moreover, the absence of any objections to the adequacy of the settlement demonstrates that the terms of the agreement are fair and favorable to the Class. *In re Ins. Brokerage*, 297 F.R.D. at 145 (approving settlement where no objections were filed); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (noting that "such a low level of objection is a 'rare phenomenon'"). To date, no class member has objected. (Block Decl. at ¶ 20.) Similarly, only one class member has opted out of the Settlement. (*Id.* at ¶ 19.) Accordingly, this factor supports a finding of fairness and entry of final approval.

> 3. The Settlement was Reached at an Appropriate Stage of the Litigation in View of the Amount of Discovery Completed

The "stage of proceedings" factor focuses on whether "counsel adequately appreciated the merits of the case before negotiating" the settlement. *In re Warfarin*, 391 F.3d at 537 (citations omitted); *see also, In re Cendant*, 264 F.3d at 235. This

factor "evaluate[s] the degree of case development that Class Counsel have accomplished prior to settlement." *In re Ins. Brokerage*, 297 F.R.D. at 145.

Plaintiff conducted a thorough investigation of the facts through extensive discovery. The Parties engaged in discovery, exchanged interrogatories and document requests, and held numerous meet and confer conferences to attempt to resolve discovery disputes. The Parties produced and reviewed thousands of pages of documents in response to those requests. Moreover, the Parties took 14 depositions. Plaintiff and Lowe's anticipated engaging in expert discovery, and Lowe's indicated it would pursue absent class member discovery before any trial. The Parties also engaged in a settlement conference before Judge Arpert. Hence, Class Counsel had a "thorough appreciation" of the merits of the case prior to agreeing to the Settlement. *Id.*

4. Risks of Establishing Liability Support Approval of the Settlement

The "risk of establishing liability" factor "examine[s] what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *In re General Motors*, 55 F.3d at 814. As Courts have explained, "[t]he inquiry requires a balancing of the likelihood of success if the case were taken to trial against the benefits of immediate settlement." *In re Ins. Brokerage*, 297 F.R.D. at 146 (quoting *In re Safety Components, Inc. Sec.*

22

*Litig.*, 166 F.Supp.2d 72, 89 (D.N.J. 2001) (quoting *In re Prudential*, 148 F.3d at 319)).

As discussed, this was a hotly disputed case and would have been throughout. To prevail, Plaintiff would have to establish that installers were free from Lowe's control and direction and that installations were within Lowe's usual course of business. Lowe's vigorously contested that it misclassified installers.  It argued that each installer was free to accept or decline specific jobs from Lowe's without consequence; each installer made their own determinations as to how to install the particular product; each installer decided when to perform the installation based on that installer's particular schedule.  In short, Lowe's claimed each installer was free from its control and direction and would have called numerous installers as witnesses who, presumably, would have testified that way. Lowe's further argued that installations were not conducted within Lowe's usual course of business as the installation sites were not Lowe's stores and that Lowe's is a retailer and not a construction company. Establishing liability on behalf of Plaintiff and the Class was fraught with risk and with no guarantee of success. Given this uncertainty and the risk of establishing liability at trial, this factor weighs in favor of final approval.

> 5.  Risks of Establishing Damages Support Approval of the Settlement

As explained by the Third Circuit, this factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In*

*re Cendant*, 264 F.3d at 238-9 (quoting *In re General Motors*, 55 F.3d at 816). This case presents a novel question, as no case brought under the CIICA has conclusively established the scope of recoverable damages. Thus, Plaintiff anticipated a costly battle of experts, as the Parties disagree over the scope and calculation of recoverable damages. While Plaintiffs valued the case at approximately $27 million if they prevailed on their claims and the jury applied their damages theory, Defendants asserted that the Class would be able to recover a maximum of only $5 million. Accordingly, as there are significant risks in establishing damages, the fifth *Girsh* factor weighs in favor of approval.

### 6.  Risk of Maintaining a Class Through Trial

As the Third Circuit has explained, "this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin*, 391 F.3d at 537. "In any class action, unforeseen developments affecting class certification can occur in the course of final pretrial preparation and trial." *Lazy Oil, Co. v. Witco Corp.*, 95 F.Supp.2d 290, 338 (W.D. Pa. 1997). Although class certification is appropriate in this case, the Court has not yet certified a litigation class, and there is no certainty that it would ultimately do so. Moreover, even if it does, "[t]here will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *In re Prudential*, 148 F.3d at 321; *see also, In re Ins. Brokerage*, 297 F.R.D. at 146

(approving the settlement where "Plaintiffs acknowledge[d] that Defendants [would] 'undoubtedly' contest class certification on various grounds"). As noted herein, if the Court granted a motion for class certification, Plaintiff is confident that Lowe's would seek to decertify any certified class. The Settlement avoids these risks, and thus the sixth *Girsh* factor weighs in favor of approval.

### 7.   Ability of the Defendant to Withstand Greater Judgment

The seventh *Girsh* factor – the ability of the defendants to withstand a greater judgment – is generally overlooked by courts, especially considering the real risk that Plaintiff could receive nothing if the case proceeded to trial. *See, e.g., Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F.Supp.2d 322, 332 (E.D. Pa. 2007) (holding that ability to pay a higher amount "did not carry much weight" in determining the fairness of the settlement). Indeed, "many settlements have been approved where a settling defendant has had the ability to pay greater amounts." *In re Remeron End-Payor Antitrust Litig.*, Nos. Civ. 02-2007, 2005 WL 2230314, at *23 (D. N.J. Sept. 13, 2005); *see also, In re Ins. Brokerage*, 297 F.R.D. at 146-147 (same). This Court should accordingly give little weight to the seventh *Girsh* factor. *Sullivan*, 667 F.3d at 323 ("At bottom, we agree that, 'in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement.'") (citation omitted).

8.   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation Supports Approval of the Settlement

The eighth and ninth *Girsh* factors – evaluated in tandem – focus on "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538. These factors "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* (citing *In re Prudential*, 148 F.3d at 322). As courts have explained, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. The percentage recovery, rather must represent a material percentage recovery to plaintiff in light of all the risks considered under *Girsh*." *In re Cendant*, 109 F. Supp. 2d at 263 (internal quotations and citations omitted); *In re Ins. Brokerage*, 297 F.R.D. at 147 (same). *See also, In re Aetna Inc. Sec. Litig.*, MDL 1219, 2001 WL 20928, *6 (E.D. Pa. Jan. 4, 2001) ("While the court is obligated to ensure that the proposed settlement is in the best interest of the class members by reference to the best possible outcome, it must also recognize that settlement typically represents a compromise and not hold counsel to an impossible standard.").

Plaintiff respectfully submits that the $2,850,000 Settlement represents a "significant and immediate monetary" benefit for the Settlement Class that

26

"outweigh[s] the risks and uncertainties that Plaintiffs will face at trial." *In re Ins. Brokerage*, 297 F.R.D. at 147. Plaintiff submits that the Settlement represents between 10 and 50 percent of maximum recoverable damages.[8] Plaintiff and the Class face the substantial risk if the case proceeds toward a trial, including class certification, decertification, summary judgment, trial and the jury's calculation of damages. Thus, taking into account all of the attendant benefits and risks, Plaintiff respectfully submits that the settlement represents a "material percentage" and rests comfortably within the range of reasonableness, and therefore the eighth and ninth *Girsh* factors support approval.

## V.   CONCLUSION

For the reasons set forth herein, the Settlement is fair, reasonable and adequate and warrants final approval.

---

[8] As discussed herein, Plaintiffs believe that maximum recoverable damages are $27 million, while Lowe's asserted that maximum recoverable damages are $5 million.

Dated: June 2, 2017

**MASHEL LAW, L.L.C.**
By: /s/ Stephan T. Mashel
Stephan T. Mashel, Esq.
Peter D. Valenzano, Esq.
500 Campus Drive, Suite 303
Morganville, New Jersey 07751
Telephone: (732) 536-6161

**BLOCK & LEVITON LLP**
Jeffrey C. Block (*pro hac vice*)
Erica Langsen (*pro hac vice*)
155 Federal Street, Suite 400
Boston, Massachusetts 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020
*Attorneys for Plaintiffs and the
Proposed Settlement Class*